The DACOURT GROUP, INC., Plaintiff,

v.

BABCOCK INDUSTRIES, INC., FKI Babcock PLC, Dennis F. Flint, Jeffrey L. Currier, Peter W. Krehbiel, and Robert M. Miller, Defendants.

Civ. No. B–89–634 (WWE).

United States District Court, D. Connecticut.

Sept. 10, 1990.

**158**

Ethan Levin–Epstein, Harold James Pickerstein, Trager and Trager, P.C., Fairfield, Conn., Neal A. Jackson, Lynn C. Fields, Priscilla N. Harris, Adams, McCullough & Beard, Washington, D.C., Pro Hac Vice, for Dacourt Group, Inc.

James A. Fulton, James C. Riley, Whitman & Ransom, Greenwich, Conn., John M. Hadlock, Steven G. Fauth, Whitman & Ransom, New York City, Pro Hac Vice, for Babcock Industries, Inc.

## RULING ON MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

EGINTON, District Judge.

Plaintiff, The Dacourt Group, Inc. ("Dacourt"), brought this action against defendants Babcock Industries, Inc. ("Babcock"), FKI Babcock PLC ("FKI"), the corporate parent of Babcock, and certain named officers of Babcock. This action arises out of a proposed $80 million sale-leaseback transaction involving commercial properties owned by Babcock. Dacourt, as the prospective purchaser and lessor, alleges that it suffered damages when, due to the actions of the various defendants, the sale and leaseback were not consummated. Jurisdiction in this action is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

### FACTS

In 1988, Babcock and Dacourt entered into negotiations for the sale and leaseback of sixteen commercial properties owned by Babcock. The initial marketing package for the transaction circulated to potential investors by Babcock's broker made the representation that FKI would provide a "keep-well" letter to assure an institutional investor/lessor interested in the properties that its subsidiary, Babcock, would maintain a certain, unspecified, minimum net worth. This representation allegedly had the express approval of Babcock and FKI.

On November 3, 1988 the representatives for the parties met to negotiate the terms of the sale-leaseback transaction. At the conclusion of the meeting, two documents were drafted to memorialize the negotiations. A "revised Offer to Purchase and Leaseback the [Babcock] Properties" (the "Revised Offer") was drafted and executed by the President of Dacourt. The Revised Offer was never subscribed to by Babcock or any authorized agent. Next, the attorney for Babcock drafted a letter (the "November 3 Letter") on Babcock's behalf which stated that "[w]e have come to a tentative agreement on basic terms." The letter was signed by Babcock's broker, David J. Daddario, who was retained for the transaction. Daddario had no express authority to execute documents or to enter into contractual agreements on behalf of Babcock. The specific terms of the FKI "keep-well" remained unresolved.

Substantial negotiations did not resume until April 11, 1989. At this meeting Dacourt demanded from FKI, in addition to the

"keep-well" guaranty, a complete indemnification for all environmental liabilities on the sixteen properties. FKI refused to satisfy either of Dacourt's demands and the transaction was placed on "hold".

Dacourt alleges that the individual defendants contacted FKI and attempted to discourage it from completing the Dacourt financing by impressing upon FKI that a contemplated management buy-out of Babcock would be less likely if Babcock had closed the sale-leaseback transaction with Dacourt. Dacourt maintains that as a result of these communications FKI notified the parties that it would not be willing to provide a "keep-well" agreement or any other form of guaranty. In May, 1989, Dacourt was informed that Babcock would not proceed with the sale-leaseback because FKI was auctioning Babcock.

In its eleven count complaint, Dacourt asserts that Babcock is liable for breach of contract, breaches of obligations to negotiate in good faith, negligent misrepresentation and on promissory estoppel grounds. Dacourt claims that FKI is liable to it under promissory estoppel because Dacourt relied to its detriment on FKI's representation that it would provide a "keep-well" guaranty as part of the sale-leaseback transaction. Dacourt also asserts claims for tortious interference against the individual defendants arising from the named officers' alleged attempts to influence FKI to abandon the sale-leaseback transaction. Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over FKI, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, or for summary judgment.

### I. Motion to Dismiss on Jurisdictional Grounds

In considering a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish by prima facie evidence that personal jurisdiction exists. *Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984). The plaintiff has asserted that the Court has jurisdiction over FKI pursuant to Conn.Gen.Stat. § 33–411(b) which provides that "[e]very foreign corporation which transacts business in this state in violation of §§ 33–395 or 33–396 shall be subject to suit in this state upon any cause of action arising out of the transaction of such business." The Court finds that plaintiff has not sustained its burden of demonstrating that FKI "transacted business" in Connecticut. *Lombard Bros., Inc. v. General Asset Management Company*, 190 Conn. 245, 252, 460 A.2d 481, 484 (1983).

FKI is a British corporation. Although its subsidiary, Babcock, is a Connecticut corporation, FKI does not maintain an office in Connecticut nor does it possess a certificate of authority to transact business in the State. The transaction which is the subject of this litigation was negotiated in New York between Dacourt and Babcock. Plaintiff has failed to produce any evidence to demonstrate that FKI purposefully availed itself of the privilege of conducting activities in Connecticut or that it transacted any business in the State. In short, FKI's only involvement with the sale-leaseback transaction was as a potential guarantor for the obligations of its Connecticut subsidiary. This relationship is insufficient to support the exercise of jurisdiction over FKI pursuant to Conn.Gen.Stat. § 33–411(b).

### II. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted or for Summary Judgment

The defendants have filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment. The parties have submitted memoranda accompanied by affidavits in support of their respective positions. The submission of these materials, and their consideration by the Court, requires that the Motion to Dismiss be deemed a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. A court may grant summary judgment where the moving party has demonstrated that "there is no gen-

uine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court conducted three days of hearings on this matter in December, 1989 before dissolving a prejudgment attachment on the properties of Messrs. Currier, Flint and Miller and is very familiar with the issues involved in this litigation.

## A. Breach of Contract Claim

The threshold issue to be addressed is whether the parties ever entered into a binding agreement for the sale-leaseback transaction. Plaintiff argues that the Revised Offer and the November 3 Letter evidence the existence of an agreement between the parties. The Court does not find that the parties, as of November 3, 1988, had come to an agreement as to the terms of the transaction.

A binding agreement can arise, if the parties so intend, prior to the signing of a formal contract. *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69 (2d Cir.1989); *Teachers Ins. and Annuity Assoc. v. Tribune Co.,* 670 F.Supp. 491 (S.D.N.Y.1987). The Court does not find Babcock ever evidenced the requisite intent to be bound by the documentation prepared on November 3. It is clear from the documents and the affidavits that the Revised Offer reflected the status of negotiations as of that date, but that material terms remained open for negotiation. The Revised Offer expressly called for the preparation of formal contractual documentation, an escrow deposit and financial and environmental covenants remained material open terms. "There is a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of documents." *Teachers Ins. and Annuity Assoc.,* 670 F.Supp. at 499. The absence of an expression of intent by an officer of Babcock to be bound by the terms of the Revised Offer and the fact that material terms remained unresolved as of November

3, 1988, lead the Court to conclude that as a matter of law a binding agreement for the sale-leaseback transaction did not exist between Dacourt and Babcock. Summary judgment is therefore granted in favor of the defendants on Count I of the complaint.

## B. Claims for Breach of the Duty of Good Faith

Counts II, V and IX of the complaint assert claims that Babcock breached its duty to negotiate in good faith. Absent an agreement between the parties, no duty of good faith can be implied. *Reprosystem B.V. v. SCM Corp.,* 727 F.2d 257, 264 (2d Cir.), *cert. denied,* 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984). In opposing the motion for summary judgment, the plaintiff asserts that the November 3 Letter "created a binding preliminary agreement" sufficient to support the finding of an implied duty of good faith. *Teachers Ins. and Annuity Assoc. v. Tribune,* 670 F.Supp. at 498. Based upon the evidence presented, the Court does not find that, as of November 3, 1988, a *binding* preliminary agreement sufficient to support an implied duty of good faith existed. The parties negotiating this transaction were experienced professionals and there is insufficient evidence to conclude that there was a bilateral intention to be bound by the November 3 documentation prior to the execution of a formal contract or prior to the resolution, through further negotiation, of the numerous open terms. Given the absence of an enforceable obligation, no duty of good faith can be implied.

## C. Claims for Tortious Interference

In Counts III, IV, X and XI of the complaint plaintiff asserts claims for tortious interference against Babcock and the individual defendants. In order to prevail on a claim for tortious interference with a contract the plaintiff must establish "proof of the existence of a valid contract, defendant's knowledge of that contract, defendant's intentional procuring of the breach of the contract and damages." *Hammerhead Enterprises, Inc. v. Brezenoff,* 551 F.Supp. 1360, 1369 (S.D.N.Y.1982), *aff'd,*

707 F.2d 33 (2d Cir.), *cert. denied,* 464 U.S. 892, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983). Based upon the finding that no contract ever existed between the parties, defendants are entitled to judgment as a matter of law on Counts III and IV.

 To prevail upon a claim for tortious interference with business expectancies a plaintiff must show that the defendant engaged in " '... fraud, misrepresentation, intimidation, or molestation ... or that the defendant acted maliciously.' " *McKeown Distributors, Inc. v. Gyp–Crete Corp.,* 618 F.Supp. 632, 644 (D.Conn.1985) (citations omitted). Plaintiff's allegations of improper motivation combined with affidavits submitted which raise the inference that the defendants' actions may have been motivated by personal benefit preclude entry of summary judgment on these claims. Whether the defendants engaged in wrongful conduct to interfere with corporate business opportunities, as alleged in Counts X and XI, involves questions of disputed material fact which are best left for the trier of fact to resolve.

### D. Claims for Promissory Estoppel

Counts VI and VII assert claims against Babcock and FKI for promissory estoppel arising from representations or promises which were allegedly made by the defendants during the negotiations. In light of the Court's ruling, supra, that the court lacks jurisdiction over FKI, these claims will only be analyzed with respect to Babcock.

 A claim for promissory estoppel requires "[1] a clear and unambiguous promise; [2] a reasonable and foreseeable reliance by the party to whom the promise is made; and [3] an injury sustained by ... reason of his reliance." *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 78 (2d Cir.1984). Dacourt bases its promissory estoppel claims on Babcock's alleged representations to third parties that "Babcock had agreed to the Dacourt financing", and Babcock's alleged representations to Dacourt that it would "proceed diligently to negotiate all relevant documents" and that "FKI would provide a keep-well agree-ment." The Court finds that while these representations may have been made they do not constitute "clear and unambiguous promises" sufficient to support a claim for damages on promissory estoppel grounds. Each of these representations were made in the course of negotiations and are too vague to satisfy the requirement of a "clear and unambiguous promise" on the part of the promisee. *Id.; D'Ulisse–Cupo v. Board of Directors,* 202 Conn. 206, 213, 520 A.2d 217, 221 (1987). At the time these alleged promises were made, material terms remained unresolved regarding each of the representations. Given the context in which the alleged representations were made, the Court concludes that no "clear and unambiguous promises" were made by Babcock and the defendant is entitled to summary judgment on Counts VI and VII of the complaint.

### E. Claims for Negligent Misrepresentation

 In Count VIII of the complaint, Dacourt alleges that Babcock's representation in the marketing package circulated for the transaction and in the November 3 documentation that a "keep-well" guaranty would be provided constitutes a negligent misrepresentation. Plaintiff has failed to submit any credible evidence which would lead the Court to conclude that at the time the representations were made Babcock knew or had reason to know they were false. Absent evidence to support plaintiff's claims that Babcock knew or should have known that FKI's willingness to provide a "keep-well" guaranty was not certain, the Court finds such claims unpersuasive. Rather, it appears the "keep-well" guaranty was withdrawn as a result of the flow of the negotiations. The withdrawal of guaranties or indemnifications being a result not uncommon in the negotiation of sophisticated corporate transactions. Finding no genuine issue of material fact as to the negligent misrepresentation claim, the defendants are entitled to summary judgment on Count VIII of the complaint.

## CONCLUSION

For the foregoing reasons, FKI's motion to dismiss is GRANTED and the only claims which remain to be litigated are Counts X and XI of the complaint. Summary judgment is GRANTED on all other counts in accordance with this ruling.

SO ORDERED.