**In re SOLOMAT PARTNERS, L.P., Solomat Enterprises, Inc., Debtors.**

**Solomat Partners, L.P., and Solomat Enterprises, Inc., Plaintiffs,**

**v.**

**Jean–Pierre Ibar, Defendant.**

**Bankruptcy No. 95–30935. Adversary No. 95–3033.**

United States Bankruptcy Court, D. Connecticut.

April 10, 2001.

---

Corey E. Friedman, New York City, John F. Carberry, Cummings & Lockwood, Stamford, CT, Niclas A. Ferland, Tyler, Cooper & Alcorn, LLP, New Haven, CT, for Plaintiffs.

Jean–Pierre Ibar, Greenwich, CT, pro-se.

## MEMORANDUM OF DECISION ON PLAINTIFFS' COMPLAINT

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

The Amended Complaint in this adversary proceeding prays for, *inter alia,* monetary and injunctive relief against the Defendant as a result of his contacts with individuals and business entities within and associated with the industry in which the Plaintiffs conduct business. This Memorandum of Decision sets forth the Court's essential findings and conclusions supporting the Judgment entered this day upon the Plaintiffs' Complaint. For the reasons stated more fully herein, judgment must enter in favor of the Defendant.

### II. JURISDICTION

This adversary proceeding is "related to" a case under Title 11, United States Code. The United States District Court for the District of Connecticut has jurisdiction over this proceeding by virtue of 28 U.S.C. § 1334(b). This Court derives its

authority to hear and determine this proceeding upon the consent of the parties and on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (c)(2).

## III. BACKGROUND

This adversary proceeding was commenced on November 10, 1994, through the filing of a Complaint seeking preliminary and permanent injunctive relief.[1] After due notice and a hearing, the Court entered a temporary restraining order against the Defendant on November 12, 1994, which has continued in effect throughout the pendency of this proceeding, either by agreement of the parties or order of the Court. This proceeding is now before the Court after a two-day trial on the merits.[2]

At all times relevant hereto the Plaintiff Solomat Partners Limited Partnership (hereafter, "SPLP") was a Delaware limited partnership, and the Plaintiff Solomat Enterprises, Inc. (hereafter, "SEI") was a Delaware corporation. At all times relevant hereto, the principal place of business of each Plaintiff was Stamford, Connecticut, where they were engaged in a high technology business within the plastics industry. The Plaintiffs' business consisted of two rather distinct operational divisions. One line of business involved the manufacture and sale of sophisticated analytical instruments used in plastics production and polymer research. The other business branch concerned the development of "Rheomolding"—a patented process which

enhances the physical properties of plastics.

The Defendant—a polymer scientist— was the developer of Rheomolding prior to the commencement of that aspect of the Plaintiffs' business; yet, at all times relevant hereto, the Rheomolding patent rights and associated tangible and intangible assets (hereafter, the "Rheomolding Assets") were the personal property of one or both of the Plaintiffs. The Defendant was the President and Chief Executive Officer of SEI from February 28, 1987, through June 17, 1994, at which time his employment was terminated by its Board of Directors. Despite the termination of his employment, the Defendant remained, at all times relevant hereto [3], a director and majority shareholder of SEI, and the majority limited partner of SPLP. In the Fall of 1994, following the termination of his employment by the Plaintiffs, the Defendant made a number of contacts with entities involved in the plastics industry in one manner or another, with the goal of soliciting for himself (i) gainful employment within the field and/or (ii) investors, or other funding sources, sufficient to enable him to purchase the Rheomolding Assets from the Plaintiffs. His efforts in this regard were undertaken with the assistance of officials at the Bankers Trust Company, and the counsel of his personal attorney. It is the nature of the aforesaid contacts which form the basis of the Claims of the Amended Complaint.

The Plaintiffs' Amended Complaint asserts four distinct Claims. First, it seeks

---

1. The original Complaint was superceded by the filing of an Amended Complaint on April 28, 1995. The Amended Complaint added two Claims not stated in the original Complaint, and supplemented its prayer for relief with a request for money damages, *inter alia.*

2. The record of this proceeding includes all evidence received at the trial on the merits on May 23, 1995, as well as that presented by the

parties at a December 5, 1994 hearing on the Plaintiffs' request for a preliminary injunction. In addition, the Court has taken judicial notice of those items requested by the parties following trial.

3. The terms of Debtors' plans of reorganization—confirmed March 20, 1995—stripped the Defendant of his equity interests and directorate.

injunctive and monetary relief in connection with an alleged breach of contract by the Defendant. The Defendant was employed by SEI pursuant to an Employment Agreement dated February 28, 1987 (hereafter, the "Agreement"). The Amended Complaint alleges that the Defendant breached certain specific provisions of the Agreement, namely Paragraphs 8 and 9 thereof. Paragraph 8 provides in pertinent part as follows:

Executive agrees that... all proprietary information gained by him in the course of his employment by the Company is the property of the Company and shall remain so. The Executive covenants that he will not, during the term of his employment by the Company or any time thereafter, communicate, divulge, discuss, use, furnish, disclose or make accessible to anyone other than the Company, its affiliated entities or the director, officers and employees thereof, any knowledge or information with respect to:

(i) Plans, reports, programs, data, statistics, or any other factual matters or projections of a confidential nature relating to the business, products, services or activities of the Company;

(ii) The names of the shareholders of the Company without their respective prior written consent;

(iii) Any confidential plans and developments, trade secrets and processes of the Company; or

(iv) Customer, sales consultant or supplier list of the Company

\* \* \* \*

This provision shall not apply to any information which is now, or which subsequently becomes available in the public domain, provided the Executive has not, other than in the ordinary course of business or as required by law, disclosed or caused to be disclose such information such as to make it publicly available.

Paragraph 9 of the Agreement provides in pertinent part as follows:

(a) The Executive covenants and agrees that he will not, during the term of his employment with the Company and for a period of twenty-four (24) months after the termination of his employment with the Company unless the termination is by reason of a breach of this Agreement by the Company, engage in, manage, operate, enter into the employ of or render any service to, directly or indirectly (as principal, agent, employee, employer, consultant, shareholder, partner or in any other capacity), any other business activity or otherwise assist any other business entity which is in the same or similar field of business endeavor as the Company. The Executive further covenants that for such period that he will not:

(i) Divulge, teach, sell or utilize the techniques, methodology, procedures and processes used by the Company in its production, marketing and business activities, *provided, however,* that if such termination does not constitute a breach of this Agreement by Ibar, the restrictions set by this subsection 9(i) shall be limited to proprietary information of the Company;

(ii) Solicit or approach any customer of the Company for the purpose of attempting to provide such customer with the same or competitive products and services provided by the Company; or

(iii) Interfere with, disrupt or attempt to disrupt any past, present or prospective relationship, contractual or otherwise, between the Company and any customer, sales consultant, supplier or employee of the Company.

(b) The foregoing notwithstanding, this *Section 9,* shall apply only in those states of the United States in which the Company carries on business and markets its products....

Enforcement of the provisions of the Agreement is provided by Paragraph 11 thereof, which reads in pertinent part as follows:

The parties hereto acknowledge and agree that the Executive will have access to confidential information concerning the customers, suppliers, product, trade secrets and business of the Company, the disclosure, divulgence or unauthorized use of which will cause the Company irreparable injury and harm. Accordingly, the Executive acknowledges that a breach by him of the provisions of this Agreement, especially the provisions of *Sections 8* through *10* inclusive hereof, would cause damage to the Company for which remedy at law would be inadequate. Therefore, the Executive expressly agrees that the Company shall be entitled to temporary and permanent injunctive or other equitable relief in any court of competent jurisdiction to prevent or otherwise to restrain a breach or compel specific performance of this Agreement for the purpose of enforcing this Agreement or any part hereof. Nothing herein shall be construed to prohibit or restrain the Company from pursuing any other remedies available to it for any breach or threatened breach of this Agreement, including the recovery of damages from the Executive.

The Amended Complaint's Second Claim alleges a common-law tort, for which a permanent injunction is sought. The basis of the Second Claim is an alleged "wrongful course of conduct", whereby the Defendant has "interfered with" the Plaintiffs' "business and economic relationships."

The Amended Complaint's Third Claim also alleges a common-law tort, for which a permanent injunction is sought. The basis of the Third Claim is an allegation that the Defendant has "disparaged and disseminated derogatory information about the... [Plaintiffs], their business and products."

The Amended Complaint's Fourth Claim alleges a breach of fiduciary duty, for which a permanent injunction and money damages are requested. The bases of the Fourth Claim are the Defendant's alleged duties by virtue of (i) his service as a Director of SEI; (ii) the Agreement; and (iii) the "trust and confidence... reposed in [him]" by the Plaintiffs.

## IV. DISCUSSION

### A. Breach of Contract.

■ By its terms, the Agreement is governed by New York law. Under New York law, to recover for breach of contract, a plaintiff must prove (i) the making of an agreement; (ii) the plaintiff's due performance; (iii) defendant's breach; and (iv) damages suffered by the plaintiff. *E.g., Stephens v. American Home Assurance Co.,* 811 F.Supp. 937, 958 (S.D.N.Y. 1993), *vacated and modified on other grounds,* 70 F.3d 10 (2d Cir.1995).

#### 1. Monetary relief.

*a. Paragraph 8*

■ This Court finds and concludes on the record as a whole that the Plaintiffs have failed to prove any breach by the Defendant of Paragraph 8 of the Agreement. It has not been established that the Defendant divulged any of the confidential information of the Plaintiffs. Nor has it been proven that he divulged any customer, sales consultant or supplier list of the Plaintiff. Although it is possible that the Defendant may have revealed to third par-

ties the identity of one or more shareholders of SEI, such information was already in the public domain by virtue of the pending bankruptcy cases or earlier publicity.

The Court further finds that the Plaintiffs and their principals were aware of, and at least tacitly accepting of, the Defendant's efforts to purchase the Rheomolding Assets. In undertaking those efforts without incidentally altering the perception of the Plaintiffs' business in the industry, the Defendant faced an extremely difficult task. Nevertheless, the Court finds and concludes that the Defendant successfully walked the "fine line" between a necessary and appropriate pursuit of his own self-interest and violation of his pre-existing contractual duties *vis-a-vis* the Plaintiffs' business.

### b. *Paragraph 9*

■ This Court finds and concludes on the record as a whole that the Plaintiffs have failed to prove any breach by the Defendant of Paragraph 9 of the Agreement. It has not been established that the Defendant competed with the business of SEI in any manner contemplated by Paragraph 9. Nor has it been proven that the Defendant divulged any proprietary information of SEI. While he *may* have solicited a "customer" of SEI,[4] he did not do so with the "purpose of attempting to provide such customer with the same or competitive products or services" as SEI's. Rather, as stated *supra*, he did so in an attempt to locate (i) gainful employment within the field and/or (ii) investors or other funding sources sufficient to enable him to purchase the Rheomolding Assets from the Plaintiffs. These were not improper pursuits under Paragraph 9 of the Agreement.

### 2. *Injunctive relief.*

Since a temporary restraining order has been in force in this case for over six years, the Plaintiffs have acquired and enjoyed, in and for that period, *de facto* injunctive relief of the nature sought by the Amended Complaint. Having now determined on the record as a whole that the Defendant has not breached the Agreement, no judicial constraints on the future conduct of the Defendant are appropriate.[5]

### B. Interference with Economic Relations.

■■ The Plaintiffs have not identified the source of law which governs their claim for interference with economic relations. However, under New York law, to prevail on a claim for tortious interference with prospective economic advantage or "economic relations", a plaintiff must demonstrate (i) that the defendant interfered with existing business relations between the plaintiff and a third party; (ii) that the defendant acted either with the sole purpose of harming the plaintiff or by means that were dishonest, unfair or in any other way improper; and (iii) that damages resulted therefrom. *See PPX Enterprises v. Audiofidelity Enterprises*, 818 F.2d 266, 269 (2d Cir.1987). Nonetheless, if a defendant's interference is intended at least in part to advance its own competing interest, the claim will fail unless the means em-

---

4. The evidence established that the Defendant had contact with, at most, two "customers" of SEI—DuPont and Rigaku.

5. This determination does not relieve the Defendant of any *continuing* obligations and duties under the Agreement. For example, although the constraints of Paragraph 9 have expired by the passage of time (24 months beyond termination), by their terms the obligations imposed by Paragraph 8 remain in force indefinitely. This observation should not be construed as a determination by the Court that the nature, scope, and/or duration of such obligations is reasonable under the circumstances.

ployed include criminal or fraudulent conduct. *See id.*

■ Under Connecticut law, to recover on a claim for tortious interference with a business relationship, a plaintiff must prove (i) that a contract or beneficial relationship existed between the plaintiff and a third party; (ii) that the defendant had knowledge of the relationship; (iii) that the defendant intentionally sought to interfere with that relationship; (iv) that the defendant acted maliciously, or engaged in fraud, misrepresentation, intimidation, or molestation; and (v) that the defendant's interference caused the plaintiff to suffer actual loss. *See, e.g., Boulevard Associates v. Sovereign Hotels, Inc.,* 852 F.Supp. 127, 132–33 (D.Conn.1994), *rev'd on other grounds* 72 F.3d 1029 (2d Cir.1995); *Windover v. Sprague Technologies,* 834 F.Supp. 560, 568 (D.Conn.1993).

■ This Court finds and concludes on the record as a whole that the Plaintiffs have failed to prove any tortious interference with existing or prospective business relations. Although the highly unusual circumstances of this proceeding inevitably led to some incidental disruption of the Plaintiffs' relations with business entities contacted by the Defendant for investment or employment purposes, it has not been established that the Defendant intentionally sought to interfere with those relationships, much less so with malicious intent and/or through fraudulent or criminal conduct.

## C. Product Disparagement.

■ The phrase "product disparagement" refers to words or other conduct which tend to reflect negatively on the quality, condition or value of a product or property. *E.g., Kirby v. Wildenstein,* 784 F.Supp. 1112, 1115 (S.D.N.Y.1992). Under New York law, to prevail on a claim for product disparagement, a plaintiff must

establish (i) the falsity of a statement by the defendant, (ii) publication of the statement to a third person, (iii) malice, and (iv) special damages in the form of actual pecuniary or economic losses. *See, e.g., id.* at 1115–16. Likewise under Connecticut law, to recover on a cause of action for product disparagement or "trade libel", a plaintiff must, at a minimum, show that it suffered special damages as a result of a false, disparaging statement by the defendant. *See Rogers Corp. v. Arlon, Inc.,* 855 F.Supp. 560, 571 (D.Conn.1994).

■ This Court finds and concludes on the record as a whole that the Plaintiffs have failed to prove any product disparagement on the part of the Defendant. Neither falsity nor malice has been established with respect to any statement of the Defendant regarding a product or property of the Plaintiffs. Indeed, there is logically no reason for the Defendant to disparage the subject products and properties of which he spoke—*i.e.* the Rheomolding Assets—since they were largely the product of his own intellect and labor.

## D. Breach of Fiduciary Duties.

■ The Plaintiffs allege three sources of fiduciary duty applicable to the Defendant: (i) the Agreement, (ii) their own "trust and confidence", and (iii) his status as a principal of SEI. The duties of the Defendant under the Agreement are simply those stated in the Agreement. Hence, in that respect the Fourth Claim is redundant of the First. As to fiduciary duties springing from the "trust and confidence" which the Plaintiffs "reposed" in the Defendant, there was no evidence presented of trust and confidence beyond that which any corporation reasonably places in a director and/or shareholder. As to the fiduciary duty springing from the Defendant's status as a principal of a corpora-

tion, the law of the State of incorporation—*i.e.* Delaware—generally governs the resolution of a claim for breach of that duty. *Cf., e.g., Walton v. Morgan Stanley & Co., Inc.,* 623 F.2d 796, 798 n. 3 (2d Cir.1980) (diversity case). Under Delaware law, a director's fiduciary duty to the corporation includes both a duty of care and a duty of loyalty. *Smith v. Van Gorkom,* 488 A.2d 858 (Del.Supr.1985). Only the duty of loyalty is implicated by the Amended Complaint.

### 1. *Monetary relief.*

 Violations of the duty of loyalty include fraud, bad faith and self-dealing. On the record as a whole the Court finds and concludes that no such conduct was proved here by the Plaintiffs.[6]

### 2. *Injunctive relief.*

Since a temporary restraining order has been in force in this case for over six years, the Plaintiffs have acquired and enjoyed in and for that period, *de facto* injunctive relief of the nature sought by the Amended Complaint. Having now determined on the record as a whole that the

6. The question of whether during the period when SEI was a Chapter 11 debtor-in-possession the fiduciary duties of individual directors and other corporate principals were heightened beyond the ordinary duty of loyalty applicable under state law is a question that need not be answered, since this Court finds under the highly unique facts and circumstances of this proceeding and the underlying bankruptcy cases that the Defendant successfully walked the fine line between a necessary pursuit of his own self-interest and loyalty to SEI and other bankruptcy constituencies. Even if the Plaintiffs had proved that the Defendant crossed the line of disloyalty, the claim would still fail as they have failed to prove any reorganizational damage, *e.g.,* that a class of claims or interests would have fared any better under confirmed plans of reorganization absent the alleged disloyalty.

7. The Court notes that as of the confirmation of the Plaintiffs' plans of reorganization, the

Defendant has not breached any fiduciary duties, no judicial constraints on the future conduct of the Defendant are appropriate.[7]

## V. CONCLUSION

For the foregoing reasons, judgment shall enter in favor of the Defendant. This Memorandum of Decision shall constitute this Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

## ORDER DISSOLVING RESTRAINING ORDER

On November 12, 1994, after due notice and a hearing, the Court entered a temporary restraining order[1] against the Defendant, which has continued in effect throughout the pendency of this adversary proceeding. This adversary proceeding having now come on for trial; and the Court having received the evidence and the arguments of the parties, and this day having stated its findings of fact and conclusions of law in its *Memorandum of Decision on Plaintiffs' Complaint,* in accordance with which it is

Defendant ceased to be a director or shareholder of SEI. However, this observation should not be construed as a determination by the Court that the Defendant does not have duties which survive his status as a corporate fiduciary.

1. That Order (hereafter, the "TRO") required the Defendant to "strictly comply" with the terms of an Employment Agreement between him and Solomat Enterprises, Inc. dated February 8, 1987 (hereafter, the "Agreement"), "particularly paragraphs 8, ... 9 ... and 10...." Neither this Order, the TRO, nor any other statement of the Court should be construed as a determination that the Defendant's obligations and duties under Paragraph 9 of the Agreement continued beyond the temporal limitations stated in that Paragraph.

**ORDERED** that all extant injunctive relief entered against the Defendant in this adversary proceeding is hereby **DISSOLVED.**[2]

### JUDGMENT

The above-captioned adversary proceeding having come on for trial; and the Court having received the evidence and the arguments of the parties, and this day having stated its findings of fact and conclusions of law in its *Memorandum of Decision on Plaintiffs' Complaint,* in accordance with which it is hereby

**ORDERED** that judgment shall enter in favor of the Defendant; each party to bear its own costs.

---

2. This Order is not intended to relieve the Defendant of any continuing obligations and duties under the Agreement, *e.g.*, those created under Paragraph 8 thereof. By the same token, this observation should not be construed as a determination by the Court that the nature, scope, and/or duration of such continuing obligations is reasonable under the circumstances.