HARRY A. FINMAN AND SON, INC. *v.* THE CONNECTICUT TRUCK AND TRAILER SERVICE COMPANY ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued April 8—decision released August 26, 1975

*Robert B. Cohen,* for the appellant (plaintiff).

*John F. Wynne,* for the appellee (named defendant).

*Charles W. Page,* with whom was *Raymond B. Green,* for the appellee (defendant Hiab Hydraulics, Inc.).

BOGDANSKI, J. The plaintiff brought this action in the first and second counts against the defendant Hiab Hydraulics, Inc., hereinafter referred to as Hiab, seeking damages for the breach of an alleged exclusive distributorship contract. In the third count, the plaintiff sought to recover damages from the defendant The Connecticut Truck and Trailer Service Company, hereinafter referred to as Truck and Trailer, for wilful interference with the contractual relationship between the plaintiff and the defendant Hiab. The jury returned a verdict for both defendants and the court denied the plaintiff's

motion to set aside the verdict. From the judgment rendered, the plaintiff has appealed to this court, assigning error in the court's charge to the jury, in the admission of certain testimony, in allowing the special defenses of the defendant Hiab to be included in the pleadings that were submitted to the jury, and in refusing to submit to the jury a separate verdict form for the plaintiff against the defendant Truck and Trailer alone.

The major issue briefed by the plaintiff concerns the court's charge to the jury regarding the terminability of a distributorship contract which is indefinite as to the date and manner of termination. That assignment of error, however, assumes that the jury found that there was a valid contract. In its pleadings, the defendant Hiab denied the existence of any contract and, in a special defense, alleged that any agreement between it and the plaintiff was unenforceable for lack of mutuality of obligation. The plaintiff's claims of proof reveal that it relied on oral negotiations, telephone calls and subsequent conduct of the parties to prove the existence of its alleged distributorship contract with the defendant Hiab.

Under those circumstances, whether a contract existed was a question of fact for the trier. *Randolph Construction Co.* v. *Kings East Corporation,* 165 Conn. 269, 277, 334 A.2d 464; *Molloy* v. *Rourke,* 83 Conn. 196, 199, 76 A. 517. The trial court submitted that issue to the jury, charging them on the legal requirements for an enforceable bilateral contract and concluding as follows: "Now, if you should find that there was no contract between the plaintiff and HIAB Hydraulics, that, of course, would end the case. If there was no contract, obviously, there could be no breach and the plaintiff

could not have been damaged and your verdict would have to be for the defendants." No error assigned to that portion of the charge has been pursued by the plaintiff in its brief, and no objection was raised at the trial to the charge of the trial court which left the jury to decide whether there was an enforceable contract.

The verdict for the defendants in this case was a general one, and the presumption is that the jury found all issues of fact in favor of the defendants. *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 362, 294 A.2d 305; *Kelly* v. *Bliss,* 160 Conn. 128, 131, 273 A.2d 873; *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 466, 199 A.2d 698; *Dillon* v. *Tarantino,* 149 Conn. 377, 380, 179 A.2d 833. Under the defendant Hiab's answer, which consisted of simple denials, and under its special defense, there were two distinct defenses advanced at the trial, the first being that there was no enforceable contract, and the second being that, if a contract did exist, it was terminable at will and, therefore, not breached. "The fact that there were . . . [those] two distinct defenses brought into operation the rule expressed in *Meglio* v. *Comeau,* 137 Conn. 551, 553, 79 A.2d 187: 'The Connecticut rule may be stated as follows: If there is no error in the instructions as to one of two distinct defenses, a general verdict for the defendant should be sustained. . . . To qualify under this definition, the defenses must be distinct. That is the decisive test.' If the defenses are clearly distinct, the fact that one has not been specially pleaded, though it should have been, will not prevent the application of the rule. *Knight Realty Co.* v. *Caserta,* 126 Conn. 162, 168, 10 A.2d 597; *Altieri* v. *Peattie Motors, Inc.,* 121 Conn. 316, 320, 185 A. 75; *Hasler* v. *T. H. Canty &*

*Co.,* 138 Conn. 343, 346, 84 A.2d 577; *Hardy* v. *Weitzman,* 147 Conn. 727, 728, 162 A.2d 507." *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 466, 199 A.2d 698.

The ground or grounds on which the verdict rests is unknown, and no interrogatories were submitted by the plaintiff which could have protected it from the implications of the general verdict rule. See Practice Book § 247; *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 362, 294 A.2d 305; *Ziman* v. *Whitley,* 110 Conn. 108, 113, 147 A. 370; *Ford* v. *H. W. Dubiskie & Co.,* 105 Conn. 572, 582, 136 A. 560. We must presume, therefore, that the jury found that there was no enforceable contract, and the curative effect of the general verdict rule makes it unnecessary to decide whether the trial court erred in charging as it did on the terminability of the alleged distributorship contract.

The plaintiff also assigns error in the admission of testimony regarding the custom and usage in the trade of terminating distributorship contracts. Those objections, however, go to the credibility and weight of the evidence and not to its admissibility. The defendant was permitted to bring out weaknesses in the testimony through cross-examination and the jury were instructed to decide what weight to give the evidence. There was no error in the evidentiary rulings.

The plaintiff next claims that it was reversible error for the trial court to submit to the jury the entire amended answer of the defendant Hiab. That answer included three special defenses which, in addition to the claim that there was no mutuality of obligation, raised defenses under both the Statute of Frauds and the antitrust laws. It is true,

as the plaintiff asserts, that no issue foreign to the facts in evidence should be submitted to the jury. *Intelisano* v. *Greenwell,* 155 Conn. 436, 443, 232 A.2d 490. In this case, however, the trial court withdrew those special defenses from the jury's consideration in the following charge: "As to those defenses, ladies and gentlemen, pay no attention to them. They involve legal problems which I have to decide. They're not of your concern, so you can just forget about those." Any possibility that the jury could have been misled by the submission to them of the entire amended answer of the defendant Hiab was cured by the court's specific instruction that they were not to consider the special defenses.

The plaintiff's final claim concerns the trial court's refusal to submit to the jury a separate verdict form in favor of the plaintiff and against the defendant Truck and Trailer alone. Upon retiring, the jury were presented with three verdict forms: one for the plaintiff against both defendants; one for both defendants against the plaintiff; and one for the plaintiff against the defendant Hiab only. The plaintiff objected and requested that a fourth verdict form be submitted to the jury, arguing that under the pleadings and evidence the jury could properly find that Truck and Trailer had interfered with its contractual relationship, even if the jury found that Hiab had not breached the alleged contract or that the contract was unenforceable.

To understand the issues raised by this last assignment of error, it is necessary to set forth the relevant pleadings and claims of proof. The third count of the complaint alleged that Hiab had appointed the plaintiff as its exclusive distributor in Connecticut; that the plaintiff, in turn, had

appointed Truck and Trailer as a subdealer for Hiab products; that the plaintiff was to receive a 10 percent commission on the list price of all Hiab sales made by Truck and Trailer; that Truck and Trailer, knowing of the plaintiff's exclusive distributorship, wilfully interfered with that contractual relationship; and that Truck and Trailer thereby deprived the plaintiff of its rights, profits and good will under its relationship with Hiab, confiscating the same unto itself.

Upon the trial, the plaintiff offered evidence to prove and claimed that it had proved the following relevant facts: In early 1963, the plaintiff became the exclusive distributor for Hiab products in Connecticut. Under that arrangement, Hiab allowed the plaintiff a 25 percent commission on all retail sales made by it. The plaintiff also "set-up" subdealers who received a 15 percent commission on sales made by them, with the remaining 10 percent going to the plaintiff. In December of 1963, the defendant Truck and Trailer corresponded with the defendant Hiab regarding the possibility of its becoming a distributor for Hiab products in Connecticut. Hiab informed Truck and Trailer that the plaintiff was its distributor in Connecticut and that it would have to work through the plaintiff. Subsequently, Truck and Trailer became a subdealer for the plaintiff. Despite its knowledge and subdealer position in the distributorship arrangement, Truck and Trailer corresponded with Hiab's central district manager, expressing its desire to become the distributor for Connecticut and questioning the sales ability of the plaintiff. That correspondence was soon followed by the termination of the plaintiff's distributorship and the appointment of Truck and Trailer as Hiab's exclusive distributor in Connecticut. In the follow-

ing two years, Truck and Trailer sold Hiab products to thirteen customers, ten of whom the plaintiff had previously contacted while it was distributor, thereby causing the plaintiff to lose its commission on over $70,000 of retail sales.

The defendants offered evidence to prove and claimed to have proved that only two customers of Truck and Trailer had previously been contacted by the plaintiff; that any distributorship arrangement between Hiab and the plaintiff was terminable at will according to the custom and usage in the trade; that the plaintiff's sales record was poor; and that the relationship was terminated because of the plaintiff's poor sales record.

On the basis of those pleadings and claims of proof, the trial court was of the view that Truck and Trailer would be liable to the plaintiff only if the jury believed that Hiab had breached an enforceable contractual obligation with the plaintiff and therefore the court submitted only the three verdict forms to the jury. It is true that the plaintiff alleged a "wilful interference with contractual relations." "The agreement need not, however, be enforceable by the plaintiff as a contract . . . . The law of course does not object to the voluntary performance of agreements merely because it will not enforce them, and it indulges in the assumption that even unenforceable promises will be carried out if no third person interferes." Prosser, Torts (4th Ed.) § 129, p. 932. Accordingly, the law not only does not restrict its protection to rights resting on enforceable contractual relationships, "but it also forbids unjustifiable interference with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his indus-

try." *Skene* v. *Carayanis,* 103 Conn. 708, 714, 131 A. 497. Thus, it is not essential to the cause of action that the tort has resulted in an actual breach of contract. *Goldman* v. *Feinberg,* 130 Conn. 671, 674, 37 A.2d 355.

The essential elements of the cause of action, whether it be called "intentional interference with contractual relations" or "unlawful interference with business relations," were present in the plaintiff's pleadings and claims of proof: there was a business relationship between the plaintiff and the defendant Hiab; the defendant Truck and Trailer, knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss. Those pleadings and claims of proof made out a prima facie cause of action against the defendant Truck and Trailer. See *R an W Hat Shop, Inc.* v. *Sculley,* 98 Conn. 1, 18, 118 A. 55; *Connors* v. *Connolly,* 86 Conn. 641, 647, 86 A. 600. Whether there was a reasonable probability that the plaintiff would have made a profit but for the interference of Truck and Trailer was a question for the jury. See *Goldman* v. *Feinberg,* supra, 675. Similarly, the jury had to decide whether Truck and Trailer had defeated the cause of action by showing that its interference was privileged or justified. See *R an W Hat Shop, Inc.* v. *Sculley,* supra. Obviously full, fair and free competition is necessary to the economic life of a community, and one may, by legitimate means, interfere with a competitor's mere expectancy that his business relations will continue. See *Goldman* v. *Feinberg,* supra; *Skene* v. *Carayanis,* supra; Prosser, Torts (4th Ed.) § 129, p. 946.

At any rate, the jury were precluded from deciding those questions by the court's refusal to submit

a fourth verdict form. Once the jury found that Hiab had not breached its contract or that the contract was unenforceable under the first and second counts of the complaint, they were unable to go on and consider the issues of fact presented by the third count since there was no possibility of returning a verdict against Truck and Trailer alone. Thus, the court's failure to submit the requested verdict form was harmful error and must result in a new trial as to the allegations of the third count.

There is error in part; the judgment is affirmed as to the defendant Hiab Hydraulics, Inc., but is set aside as to the defendant The Connecticut Truck and Trailer Service Company, and as to it a new trial is ordered on the third count of the complaint.

In this opinion the other judges concurred.