# MAX F. BRUNSWICK *v.* SAFECO INSURANCE COMPANY
## (AC 17001)

Lavery, Sullivan and Daly, Js.

Argued February 19—officially released May 19, 1998

*David M. Reilly*, for the appellant (plaintiff).

*Roger J. Frechette*, with whom, on the brief, was *Franz P. Frechette*, for the appellee (defendant).

LAVERY, J. The plaintiff, Max F. Brunswick, appeals from the summary judgment rendered by the trial court in favor of the defendant, Safeco Insurance Company. The issues raised on appeal concern whether an attorney can bring a cause of action against an insurance carrier that settled a personal injury action directly with the attorney's former client. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. The plaintiff is an attorney engaged in the practice of law in New Haven. At some time prior to 1991, the plaintiff undertook to represent Mary Osborne in connection with injuries she sustained in an automobile accident. The plaintiff claims that he met with Osborne's daughter at a time when Osborne was incapacitated[1] and gave the daughter a copy of his retainer agreement, which included the plaintiff's name but was not signed by him. The plaintiff subsequently had a telephone conversation with Osborne during which he asked Osborne to sign and return the retainer agreement. Osborne neither signed nor returned the agreement to the plaintiff.

Nonetheless, the plaintiff proceeded with his representation of Osborne by obtaining copies of her relevant medical records, issuing letters of protection to her health care providers and others, and commencing suit on her behalf against the driver of the other vehicle, who was insured by the defendant. During the pendency of the personal injury suit, Osborne informed the plaintiff by letter dated May 8, 1991, that she no longer

---

[1] There is evidence that the plaintiff was already representing Osborne in another personal injury action.

wanted him to represent her in this matter because she was going to negotiate a settlement directly with the defendant.[2] On May 28, 1991, Osborne filed her pro se appearance in lieu of the plaintiff's in the personal injury action, but failed to provide notice of her appearance in accordance with the rules of practice. In early June, 1991, the plaintiff appeared at short calendar on behalf of Osborne and entered a discovery agreement reached with counsel retained by the defendant to represent its insured. Although several of the defendant's agents knew of the plaintiff's interest as Osborne's attorney, the defendant negotiated a settlement of the personal injury action directly with Osborne in October, 1991. The plaintiff was not given notice of the settlement, payment or withdrawal of the action.

On August 3, 1992, the plaintiff commenced the action now before this court by serving the defendant with a six count complaint. The plaintiff alleged that (1) he has a common-law lien on the recovery in the amount of his compensation, (2) the defendant tortiously interfered with his contractual rights, (3) the defendant's actions violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., (4) the defendant violated the regulations of the insurance commission,[3] (5) the defendant violated the plaintiff's property rights under 42 U.S.C. § 1983 and (6) the defendant's reckless acts impaired the rights of those given letters of protection by the plaintiff. As special defenses to the plaintiff's action, the defendant alleged that the plaintiff failed to comply with General Statutes § 52-251c[4] and with rule

[2] The plaintiff responded to Osborne by letter dated May 15, 1991, attempting to dissuade her from negotiating the settlement herself.

[3] The plaintiff subsequently withdrew the last paragraph of count four, which was then identical to count two.

[4] General Statutes § 52-251c provides in relevant part: "Limitation on attorney contingency fees in personal injury, wrongful death and property damage actions. (a) In any claim or civil action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, the attorney and the claimant may provide by contract,

1.5 (c)[5] of the Rules of Professional Conduct (effective October 1, 1986).[6]

Between July, 1993, and October, 1996, the parties filed five motions for summary judgment and also filed corresponding objections with affidavits and other evidence.[7] On February 26, 1997, the trial court simultaneously granted the defendant's third and fourth motions for summary judgment.[8] The plaintiff appealed.

On appeal, the plaintiff claims that the trial court improperly granted summary judgment because (1) the defendant did not have standing to raise § 52-251c and rule 1.5 (c) in defense of the plaintiff's claims, (2) a lawyer who performs services for a client is not barred from recovery for services rendered where the attorney has issued his written commitment to abide by the regulations of § 52-251c and rule 1.5 (c) even though

which contract shall comply with all applicable provisions of the rules of professional conduct governing attorneys adopted by the judges of the Superior Court, that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) Damages awarded and received by the claimant; or (2) settlement amount pursuant to a settlement agreement."

[5] Rule 1.5 (c) provides: "A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subsection (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."

[6] The defendant also impleaded Osborne as a third party defendant. The third party complaint is not before us.

[7] The first three motions for summary judgment were not ruled on by the trial court.

[8] The grounds and arguments of the motions for summary judgment are identical, with the exception of supporting documents, and will be discussed together.

the commitment is not signed, (3) the plaintiff is protected by the rule that a party may not repudiate her bargain in bad faith to reap the benefit of a statute, (4) an action for interference with contractual relations or business relations may be brought against a tortfeasor even though an enforceable contract did not exist, and (5) the plaintiff's cause of action was alleged, in part, pursuant to General Statutes § 42-110b,[9] not General Statutes § 38a-816 (6), which is part of the Connecticut Unfair Insurance Practices Act (CUIPA).

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established." *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 402, 528 A.2d 805 (1987). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384, now Practice Book (1998 Rev.) § 17-49. A "material fact" is a fact that will make a difference in the result of the case. See *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578, 573 A.2d 699 (1990). The facts at issue are those alleged in the pleadings. See *Plouffe* v. *New York, N.H. & H.R. Co.*, 160 Conn. 482, 489, 280 A.2d 359 (1971). The party seeking summary judgment "has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980). Pursuant to Practice Book §§ 380 and 381, now Practice Book (1998 Rev.) §§ 17-45 and 17-46, the party adverse to such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. "In deciding a motion for summary judgment, the trial court must view the

---

[9] Section 42-110b is part of CUTPA.

evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) *Connell* v. *Colwell*, 214 Conn. 242, 246–47, 571 A.2d 116 (1990). A defendant's motion for summary judgment "is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 543, 494 A.2d 555 (1985).

I

The plaintiff's first claim is that the trial court improperly determined that the defendant has standing to assert § 52-251c and rule 1.5 (c) as special defenses because it is not within the class that the statute and rule were intended to protect. The defendant's special defenses are at the heart of its motions for summary judgment because they attack the plaintiff's failure to secure a written fee agreement when he undertook to represent Osborne. This failure is fatal to the plaintiff's claims. See *Alan E. Silver, P.C.* v. *Jacobs*, 43 Conn. App. 184, 188–89, 682 A.2d 551, cert. denied, 239 Conn. 938, 684 A.2d 708 (1996).

Our law is clear. When an attorney undertakes to represent a client in a personal injury action, the attorney and the client "may provide by contract, which contract shall comply with all applicable provisions of the rules of professional conduct . . . that the fee for the attorney shall be paid" contingent upon certain events. See General Statues § 52-251c (a). The applicable rule of professional conduct provides that "[a] contingent fee agreement shall be in writing . . . ." Rule 1.5 (c) of the Rules of Professional Conduct. The use of the word *shall* means that the performance of the statutory requirement is mandatory rather than permis-

sive. See *Caulkins* v. *Petrillo*, 200 Conn. 713, 717, 513 A.2d 43 (1986).

Section 52-251c "was intended to regulate the attorney-client relationship in order to protect plaintiffs from excessive legal fees." *Berry* v. *Loiseau*, 223 Conn. 786, 830 n.22, 614 A.2d 414 (1992). "Where a law is passed for the protection of the public, we will not undermine the remedial purposes of the statute . . . ." *Alan E. Silver, P.C.* v. *Jacobs*, supra, 43 Conn. App. 190. Although *Jacobs* makes it clear that the plaintiff could not enforce his claim for fees against Osborne because there was no written agreement, the plaintiff argues that the defendant is not within the class to be protected by § 52-251c and for that reason cannot invoke its protection. We disagree.

"In order to establish liability as a result of a statutory violation, a plaintiff must satisfy two conditions. First, the plaintiff must be within the class of persons protected by the statute. . . . Second, the injury must be of the type which the statute was intended to prevent." (Citations omitted; internal quotation marks omitted.) *Berchtold* v. *Maggi*, 191 Conn. 266, 274–75, 464 A.2d 1 (1983). Here, the defendant asserts § 52-251c as a special defense; it does not attempt to use the statute because it has sustained an injury. The plaintiff is the party claiming the injury. Section 52-251c placed an affirmative duty on the plaintiff; he cannot come forward now seeking justice when he failed to follow the law.

Section § 52-251c protects clients from excessive legal fees by regulating the attorney-client relationship. *Berry* v. *Loiseau*, supra, 223 Conn. 830 n.22. The statute permits the attorney and client to enter into a written contract to govern the attorney's fee. A contract is binding on all parties to the agreement. See *Herbert S. New-*

*man & Partners, P.C.* v. *CFC Construction Ltd. Partnership,* 236 Conn. 750, 760, 674 A.2d 1313 (1996). The plaintiff could have protected his interests by abiding by the dictates of the statute. He cannot now complain that the defendant should have protected his interests, which he, by law, could have done himself.

The plaintiff also argues that because the attorneys retained by the defendant to represent its insured knew of the plaintiff's appearance in the personal injury suit and because Osborne had not properly certified her May 28, 1991 pro se appearance to the plaintiff; see Practice Book § 123, now Practice Book (1998 Rev.) § 10-14; the defendant's direct communication with Osborne was improper. This argument is unavailing. Osborne wrote to the plaintiff on May 8, 1991, not only discharging him, but also telling him she intended to negotiate a settlement with the defendant directly.

## II

The plaintiff's second claim is that the trial court improperly granted the defendant's summary judgment motion because a lawyer who performs services for a client is not barred from recovery for services rendered where the attorney has issued a commitment to abide by the dictates of § 52-251c and rule 1.5 (c) that is not signed.[10] In support of his argument, the plaintiff relies on *Schwarzschild* v. *Martin,* 191 Conn. 316, 321–22, 464 A.2d 774 (1983). The plaintiff's reliance is misplaced.

In *Schwarzschild,* the dispute was whether a written agreement that had not been signed by one of the parties to the agreement was enforceable as to all of the parties. Here, the plaintiff seeks to enforce an unsigned agreement allegedly between himself and Osborne

---

[10] The case before us does not require us to determine whether the written agreement required by § 52-251c and rule 1.5 (c) must be signed.

against the defendant, who was not a party to the attorney-client relationship. Furthermore, it is evident that the plaintiff and Osborne did not have an agreement at the time the defendant settled Osborne's claim. Osborne discharged the plaintiff in May, 1991, and the defendant settled Osborne's claim in October, 1991.

## III

The plaintiff's third claim is that the trial court improperly granted the defendant's motion for summary judgment because a party may not repudiate her bargain in bad faith to reap the benefit of a statute. See *Habetz* v. *Condon*, 224 Conn. 231, 238, 618 A.2d 501 (1992). Again, the plaintiff attempts to impute the acts of Osborne[11] to the defendant, which he may not do. There is no genuine issue of material fact that Osborne discharged the plaintiff as her attorney at least five months before the defendant settled Osborne's claim. Osborne informed the defendant that she had discharged the plaintiff and intended to settle her claim directly. There is no evidence, in any form, that the defendant acted in bad faith.

## IV

The plaintiff's next claim is that a plaintiff may bring an action against a tortfeasor for interference with contractual relations or business relations even though an enforceable contract did not exist. In support of that claim, the plaintiff relies on the rule governing intentional interference with contractual relations or unlawful interference with business relations set forth in *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.*, 169 Conn. 407, 415, 363 A.2d 86 (1975). While we agree with the plaintiff's statement of

---

[11] This appeal does not require us to determine whether the plaintiff could state a cause of action against Osborne based on bad faith.

the rule,[12] the rule has no application to this case, which is factually distinguishable from *Harry A. Finman & Son, Inc.*[13]

In *Harry A. Finman & Son, Inc.*, the plaintiff was the defendant hydraulics company's Connecticut distributor. The defendant trucking company, which knew of the plaintiff's relationship with the hydraulics company, corresponded with the company and questioned the plaintiff's sales ability. The defendant trucking company was then appointed the hydraulics company's exclusive distributor in Connecticut. The Supreme Court held that the elements of the plaintiff's cause of action against the defendant trucking company were present in its pleadings and claims of proof, and were sufficient to make out a prima facie cause of action. Therefore, the trial court should have submitted a verdict form to the jury on the plaintiff's claims against the defendant trucking company.

Here, Osborne discharged the plaintiff by letter and so informed the defendant. Osborne's claims were settled at least five months after she discharged the plaintiff. There was no evidence presented that the defendant initiated correspondence directly with Osborne and, thus, was the cause of Osborne's terminating the plaintiff's employment.

## V

The plaintiff's final claim is that the trial court improperly granted summary judgment as to his CUTPA claim because the trial court applied the CUIPA standard

---

[12] "Accordingly, the law not only does not restrict its protection to rights resting on enforceable contractual relationships, 'but it also forbids unjustifiable interference with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry.' *Skene* v. *Carayanis*, 103 Conn. 708, 714, 131 A. 497 [1926]." *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.*, supra, 169 Conn. 414–15.

[13] The issue on appeal in *Harry A. Finman & Son, Inc.*, supra, 169 Conn. 407, concerned the interrogatories that were sent to the jury.

requiring a plaintiff to allege more than one unfair act of claim settlement practice prohibited by § 38a-816 (6). See *Lees* v. *Middlesex Ins. Co.*, 229 Conn. 842, 850–51, 643 A.2d 1282 (1994); *Mead* v. *Burns*, 199 Conn. 651, 666, 509 A.2d 11 (1986). The plaintiff cites no Connecticut law in support of his claim that an attorney may assert a CUTPA claim, exclusive of a CUIPA allegation, against an insurer that settles a claim with a former client. Because the plaintiff has provided no analysis of the rule of law applicable to our statutes, we will not review this claim.[14] See *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 100, 709 A.2d 14 (1998); *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 42 Conn. App. 426, 439 n.12, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] In his reply brief, the plaintiff cites several cases from other jurisdictions in answer to the defendant's brief. None of the cases is about CUTPA.