EUGENE P. MERCER *v.* KATISHIA COSLEY ET AL.
(AC 28960)

Flynn, C. J., and Beach and Dupont, Js.

284

Argued June 2—officially released September 16, 2008

*Eugene P. Mercer*, pro se, the appellant (plaintiff).

*William S. Fish, Jr.*, with whom was *Paul Guggina*, for the appellees (defendants).

*Opinion*

FLYNN, C. J. The pro se plaintiff, Eugene P. Mercer, appeals from the summary judgment rendered by the trial court in favor of the defendants, Katishia Cosley, Burchell Henry, Paul Lewis and Jerry Martin and their employer, Tribune Television Company, also known as WTIC FOX-61 (collectively FOX-61), and Thomas M. O'Brien and his employer, Outlet Broadcasting, Inc., doing business as WVIT NBC-30 (collectively NBC-30). On appeal, the plaintiff claims that the court improperly (1) failed to recuse itself, sua sponte, on the basis of judicial bias and (2) rendered summary judgment in favor of the defendants on the plaintiff's libel claim. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and relevant procedural history. The plaintiff is an inmate serving a forty-five year sentence for felony murder. See *State* v. *Mercer*, 208 Conn. 52, 53–54, 544 A.2d 611 (1988). In July, 2004, the plaintiff filed an action against the state in the Superior Court, seeking treatment for physical symptoms related to acquired immune deficiency syndrome (AIDS) and claiming discrimination.[1] In that action, the plaintiff claimed, in part, that he "has [AIDS] resultant from his [human immunodeficiency virus (HIV)] infection" and that the state had discriminated against him in denying his "request for the reasonable accommodation of testosterone gel in January, 2004, [when] the . . . request for testosterone gel was for the treatment of HIV-hypogonadism and erectile dysfunction . . . ." He also alleged that the state "knew or should have reasonably known that the plaintiff's medical record reflects multiple instances over the

[1] A copy of this complaint and the cases filed with the commission on human rights and opportunities is contained in the court's file. The plaintiff filed these copies along with an affidavit attesting to their truth, accuracy and completeness in the trial court.

course of several years concerning his decreased spontaneous erections, erectile dysfunction, decreased muscle mass and strength" and that the testosterone gel "restores sexual function, and muscle mass and strength and prevents bone loss." The plaintiff also filed two cases with the commission on human rights and opportunities in 2004, claiming, in part, that he suffers from "Vacuolar Myelopathy, Peripheral Neuropathy and HIV-[h]ypogonadism or erectile dysfunction," and that he "has been denied diagnosis and treatment of impotence and/or HIV-[h]ypogonadism."

On May 25, 2005, defendants NBC-30 and FOX-61 each aired a report regarding Governor M. Jodi Rell's order that the department of social services stop providing Viagra and other similar drugs to sexual offenders through the Medicaid program. They also discussed the plaintiff's complaints against the state during these reports.

In response, the plaintiff filed the present action against the defendants claiming, in relevant part,[2] libel per se,[3] pursuant to General Statutes § 52-237.[4] The complaint alleged, inter alia: "1. The plaintiff . . . is currently an inmate incarcerated at the Connecticut correctional institution—Osborne. [The] [p]laintiff files this action against the [defendants] with claims of libel per se and [other additional claims] . . . .

---

[2] Additional counts in the complaint are not relevant to this appeal.

[3] In rendering a decision on the defendants' motion for summary judgment, the court apparently considered the plaintiff's libel count as sounding in libel per quod, rather than libel per se, as did the defendants.

[4] General Statutes § 52-237 provides: "In any action for a libel, the defendant may give proof of intention; and unless the plaintiff proves either malice in fact or that the defendant, after having been requested by the plaintiff in writing to retract the libelous charge, in as public a manner as that in which it was made, failed to do so within a reasonable time, the plaintiff shall recover nothing but such actual damage as the plaintiff may have specially alleged and proved."

"6. . . . [The defendants] acted with actual malice and reckless disregard of the truth and negligence in their broadcast of false allegations [and] defamatory statements . . . .

"12. During the ten o'clock news . . . broadcast on Wednesday, May 25, 2005, [t]he defendant[s] . . . made individual and separate defamatory and slanderous statements [t]hat [the] plaintiff is suing . . . the [s]tate or the [d]epartment of [c]orrection for Viagra, for treatment of [the] plaintiff's erectile dysfunction.

"13. [The] [d]efendants Cosley and Henry [p]ublicly disclosed during their broadcasting the plaintiff's confidential HIV-related information . . . . A photograph of the plaintiff was also publicly displayed during the defendant[s'] broadcast[s]. In addition to their television broadcast[s], the defendant[s] have published the defamatory and slanderous statement[s] through the Internet . . . .

"14. . . . [T]he defendant[s'] broadcast[s] [were] about or in response to Governor Jodi Rell's order to the state [d]epartment of [s]ocial [s]ervices to make sure state medical assistance programs do not cover the cost of erectile dysfunction drugs for registered sex offenders.

"15. In addition to their actual malice, defamatory and slanderous statements, the defendants placed the plaintiff in a false light as a registered sex offender and exposed the plaintiff to hatred, contempt or aversion and induced . . . unsavory opinions of the plaintiff in the minds of a substantial number of the general public and the prison community.

"16. . . . With malice in [public] broadcasting and publishing false accusations with defamatory and slanderous statements [the plaintiff] has [been] prejudiced . . . in his reputation within the general public and

prison community, and [the defendants have] placed the plaintiff's life . . . in danger by intimidation and threat of physical harm by inmates of the prison population who perceive the plaintiff as a sex offender and/ or homosexual willing to infect other prisoners with HIV by engaging in sexual activities with the aid of [V]iagra, as well as harassment and intimidation of correctional officers.

"17. The plaintiff does not have, nor did the plaintiff ever have, any lawsuits against the state . . . for [V]iagra as a treatment for erectile dysfunction.

"18. The plaintiff is not a sex offender or a registered sex offender, and is not a recipient of any state medical assistance programs. The plaintiff is a ward of the state [d]epartment of [c]orrection and receives all medical care from the [University of Connecticut] [c]orrectional [m]anaged [c]are contract. . . .

"19. The plaintiff does have a pending lawsuit in [the] New Britain Superior Court, [Docket] No. CV-04-4000197-S against officials of the [department of correction] for discrimination based on disability . . . for their failure to diagnose and treat HIV-[h]ypogonadism and/or erectile dysfunction . . . . There is no allegation or request in the above mentioned complaint for [V]iagra. Rather, the treatment requested was testosterone gel and/or a urology consultation and appropriate therapy as would be prescribed by the urology consult.

"20. The plaintiff also has two pending complaints with the commission of [h]uman [r]ights and [o]pportunities, CHRO No. 0540397 and 0540398 against [the department of correction and the University of Connecticut Health Center/Correctional managed health care], respectively for discrimination based on disability . . . for their failure to diagnose and treat HIV-[h]ypogonadism and/or erectile dysfunction . . . . There is no

allegation or request in the above mentioned . . . complaint[s] for Viagra. Rather, the treatment requested was testosterone gel and/or a urology consult.

"21. The defendant[s'] reckless disregard of the truth, acts and omissions in their deliberate and negligent television broadcast and [I]nternet publication of false accusations, defamatory and slanderous statement[s] and their disclosure of the plaintiff's confidential HIV-related information has violated the plaintiff's right[s] . . . ." (Internal quotation marks omitted.)

The complaint went on to allege: "Third claim of relief—Title 52-237 of the Connecticut [G]eneral [S]tatutes—libel per se—[General Statutes §] 19a-581 . . .

"27. [The] defendant[s] acted with actual malice, reckless disregard [f]or the truth and negligence in their broadcast of false allegations, defamatory statement[s] and disclosure of the plaintiff's confidential HIV-related information, in violation of [General Statutes §§] 52-237 and 19a-581."

The defendants filed an answer and two special defenses to the plaintiff's libel claim, namely, substantial truth and the fair reporting privilege. On September 1, 2006, the defendants filed a motion for summary judgment, which was granted by the court on June 5, 2007, after it concluded that there were no material issues of fact in dispute and that both special defenses were applicable. This appeal followed. We affirm the summary judgment of the trial court.

I

On appeal, the plaintiff claims that the trial judge improperly failed to recuse himself, sua sponte, after demonstrating judicial bias in violation of canon 3 (c)

(1) of the Code of Judicial Conduct.[5] The plaintiff argues that the judge demonstrated bias when he became the defendants' "adviser" in drafting an order denying in part the defendants' motion to strike, which stated, in relevant part, that if the "defendants had filed a motion for summary judgment, the decision might well have been different." The plaintiff acknowledges that this issue was not presented to the trial court and, therefore, is unpreserved. He requests that we employ plain error review.[6] Having reviewed the record, we are unable to find anything, "in the interests of justice"; Practice Book § 60-5; that rises to the level of plain error. Nothing in the record undermines our confidence in the court's fact-finding process or demonstrates judicial bias.

"Ordinarily, we will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court through a motion for disqualification or a motion for mistrial. . . . Because an accusation of judicial bias or prejudice strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary . . . we nonetheless have reviewed unpreserved claims of judicial bias under the plain error doctrine." (Citations omitted; internal

---

[5] Canon 3 (c) (1) of the Code of Judicial Conduct "requires a judge to disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. The reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Even in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority." (Citations omitted; internal quotation marks omitted.) *State* v. *Ortiz*, 83 Conn. App. 142, 150, 848 A.2d 1246, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004).

[6] "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Practice Book § 60-5.

quotation marks omitted.) *Doody* v. *Doody*, 99 Conn. App. 512, 523, 914 A.2d 1058 (2007). "The plain error doctrine [however] is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 239–40, 881 A.2d 160 (2005).

The standard to be employed when determining whether a judge should recuse herself or himself pursuant to canon 3 (c) is well established. "The standard . . . is an objective one [meant to assess] whether [the judge] can be fair and impartial in hearing the case. . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard. . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question [the judge's] . . . impartiality, on the basis of all of the circumstances." (Internal quotation marks omitted.) *Sabatasso* v. *Hogan*, 91 Conn. App. 808, 825, 882 A.2d 719, cert. denied, 276 Conn. 923, 888 A.2d 91 (2005).

The following additional facts are necessary to our analysis. The defendants had filed a motion to strike the plaintiff's complaint and had attached transcripts of the television reports to their motion. The plaintiff also attached exhibits to his opposition to the defendants' motion. On May 30, 2006, the court heard argument on the defendants' motion to strike. During the hearing, the defendants also asked the court to evaluate the difference between Viagra and testosterone gel in rendering its decision. The court explained that it thought the defendants were getting into a "speaking" motion to strike in asking the court to look beyond the pleadings.[7] The defendants responded that, although arguable, they believed it was appropriate for the court to review the transcripts in this case and to make a judgment concerning the use of the two medications. The defendants also argued that if the court took these things into consideration, it would find that their broadcast substantially was true but that if it did not make such a finding, they "certainly [would] be raising this again on a motion for summary judgment . . . ."

In an August 2, 2006 order, the court granted the motion to strike in part and denied it in part.[8] Specifically, the memorandum of decision stated: "The court cannot look to facts—even uncontested facts—outside the allegations of the complaint as a basis for granting a motion to strike. [The] plaintiff has set forth sufficient

[7] A speaking motion to strike is one improperly importing facts from outside the pleadings. See *Liljedahl Bros., Inc.* v. *Grigsby*, 215 Conn. 345, 347–48, 576 A.2d 149 (1990); *Bulkley* v. *Norwich & W. Ry. Co.*, 81 Conn. 284, 286, 70 A. 1021 (1908); *Zirinsky* v. *Zirinsky*, 87 Conn. App. 257, 269 n.9, 865 A.2d 488, cert. denied, 273 Conn. 916, 871 A.2d 372 (2005). Speaking motions have long been forbidden by our practice and were formerly known as speaking demurrers. See, e.g., *Tilo Co.* v. *Fishman*, 164 Conn. 212, 213, 319 A.2d 409 (1972).

[8] This order subsequently was vacated and a new corrected order was issued on September 22, 2006. This fact, however, is not relevant to the issues on appeal.

factual allegations in these counts to state viable causes of action against the defendants. If [the] defendants had filed a motion for summary judgment, the decision might well have been different."

In the claim of judicial bias, the plaintiff argues in effect that the court's remark affected the defendants' handling of the case and, perhaps, instigated their filing of their motion for summary judgment. Having reviewed the record, we conclude that the statements contained in the court's order merely served to explain the basis for the court's ruling and that they were not demonstrative of any bias. The court merely was pointing out the difference between a motion for summary judgment and a motion to strike in terms of the ability to look at exhibits and information outside allegations of the complaint. Unlike a motion for summary judgment, "a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court . . . ." (Internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 667, 748 A.2d 834 (2000). Furthermore, the transcript from the May 30, 2006 hearing, three months before the court issued its ruling, revealed the defendants' statement that they would file a motion for summary judgment if the court denied in part the motion to strike.

Our thorough review of the record does not reveal anything that leads us to question the judge's impartiality in this case. Further, the plaintiff has not demonstrated that he suffered manifest injustice such that would warrant a finding of plain error.

## II

The plaintiff next claims that the court's rendering of summary judgment on his claim of libel was improper because there existed disputed material facts related to the defendants' special defenses asserting substantial truth and the protection of the fair reporting privilege.

We affirm the court's granting of summary judgment on the ground that the news broadcasts were true either substantially or literally. After setting forth the applicable standard of review and the law on defamation and libel, in particular, we will address the court's granting of the motion for summary judgment on the plaintiff's claim. First, however, we briefly digress in order to note that the plaintiff repeatedly throughout his complaint states that his claim sounds in libel per se.[9] To recover

---

[9] "Libel per se . . . is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages. . . . Whether a publication is libelous per se is a question for the court." (Internal quotation marks omitted.) *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, 77 Conn. App. 846, 852, 825 A.2d 827, cert. denied, 267 Conn. 901, 838 A.2d 210 (2003). "[L]ibel is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business. . . . Libel . . . is also actionable per se if it charges a crime involving moral turpitude or to which an infamous penalty is attached." (Citations omitted; internal quotation marks omitted.) *Miles* v. *Perry*, 11 Conn. App. 584, 601–602, 529 A.2d 199 (1987). "Whether a published article is libelous per se must be determined upon the face of the article itself. The statements contained therein, taking them in the sense in which common and reasonable minds would understand them, are determinative, and they may not for this purpose be varied or enlarged by innuendo." (Internal quotation marks omitted.) *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 492, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987).

Additionally, we note that the plaintiff did not claim libel by innuendo or implication in his pleading, nor is there any mention of such a theory by the trial court or in the plaintiff's brief on appeal. Reviewing the transcript from the hearing on the motion for summary judgment, however, it is clear that the plaintiff argued: "Although I did not plead any of the claims of false light and invasion of privacy or defamation by innuendo, it is not essential to the sufficiency of the complaint alleging a statutory cause of action that the precise terms of the applicable statute either be counted upon or recited . . . . [A]s a pro se litigant, my pleading must be construed liberally."

Although it is our policy to be solicitous of pro se litigants, such policy is applicable only when it does not interfere with the rights of other parties. Although our courts "allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 498, 863 A.2d 680 (2005). In this case, the plaintiff did not plead defamation by innuendo, nor does the cited statute,

on a claim that the libel was actionable per se, a plaintiff must show that the libel, on its face, either charged some impropriety in the plaintiff's business or profession or that it charged a crime of moral turpitude. See *Miles* v. *Perry*, 11 Conn. App. 584, 601–602, 529 A.2d 199 (1987). Neither the parties nor the trial court discussed this aspect of the plaintiff's complaint. Likewise, the parties have not raised this as an issue on appeal. Accordingly, we do not consider whether the news broadcasts were actionable as per se libel.

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the

§ 52-237, speak to defamation by innuendo such that the defendants would have been aware of such a cause of action.

"It is axiomatic that a plaintiff may rely only upon what he has alleged [and] the right of a plaintiff to recover is limited to the allegations of his complaint. . . . What is in issue is determined by the pleadings and these must be in writing. . . . [P]leadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . The purpose of a complaint . . . is to limit the issues at trial, and such pleadings are calculated to prevent surprise." (Citations omitted; internal quotation marks omitted.) *Connecticut Education Assn., Inc.* v. *Milliman USA, Inc.*, 105 Conn. App. 446, 460, 938 A.2d 1249 (2008). "A plaintiff's right to recover has traditionally been limited to the allegations of his complaint, and a plaintiff *may not allege one cause of action and recover upon another*." (Emphasis added.) *Altberg* v. *Paul Kovacs Tire Shop, Inc.*, 31 Conn. App. 634, 640, 626 A.2d 804 (1993), citing *Tedesco* v. *Stamford*, 215 Conn. 450, 458, 576 A.2d 1273 (1990), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992), and *A. V. Giordano Co.* v. *American Diamond Exchange, Inc.*, 31 Conn. App. 163, 166, 623 A.2d 1048 (1993).

absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Reardon* v. *Windswept Farm, LLC,* 280 Conn. 153, 158, 905 A.2d 1156 (2006).

"[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of [an issue of] material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Gould* v. *Mellick & Sexton,* 263 Conn. 140, 151, 819 A.2d 216 (2003). "A defendant's motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Internal quotation marks omitted.) *Brunswick* v. *Safeco Ins. Co.,* 48 Conn. App. 699, 704, 711 A.2d 1202, cert. denied, 247 Conn. 923, 719 A.2d 1168 (1998). Our review of the trial court's decision to grant the defendants' motion for summary judgment is plenary. See *Reardon* v. *Windswept Farm, LLC,* supra, 280 Conn. 158.

The plaintiff claims that the court improperly granted the defendants' motion for summary judgment on his libel count. "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the

defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, 282 Conn. 821, 838, 925 A.2d 1030 (2007).

"Defamation is comprised of the torts of libel and slander. . . . Slander is oral defamation. . . . Libel . . . is written defamation." (Internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 850, 863 A.2d 735 (2005). It has been held by our Supreme Court that "reading from a prepared manuscript in a radio address constitutes libel, even though the result is the spoken word, as the words have been reduced to permanent form in the manuscript." D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 146, p. 407, citing *Charles Parker Co.* v. *Silver City Crystal Co.*, 142 Conn. 605, 116 A.2d 440 (1955). In this case, involving televised news broadcasts, which certainly are reduced to permanent form in this day and age, we conclude that a claim of defamation properly could sound in libel as the plaintiff had alleged in his complaint. We continue our analysis by examining separately the content of both broadcasts.

### A

### Broadcast of FOX-61

A transcript of a May 25, 2005 FOX-61 news broadcast was submitted to the trial court along with an affidavit attesting that it was a true, accurate and complete transcript of the relevant broadcast that forms the basis of the plaintiff's claim against Fox-61. The transcript is as follows:

"Unidentified woman: It's a complete outrage. It's like giving a loaded gun to a murderer.

"Caption: 'Drug Dispute'

"Brent Hardin (Anchor): A drug dispute here in Connecticut and across the country. Should taxpayers foot the bill for impotence drugs to sex offenders? Governor [M.] Jodi Rell says no, and she's trying to make sure Connecticut taxpayers don't have to pick up the tab for inmates in our prisons.

"Susan Christensen (Anchor): The federal government reports more than 400 convicted sex offenders in New York and Florida got impotence drugs through federally or state-funded healthcare programs. Today Governor Rell ordered the department of social services to come up with a plan to prevent that happening here. Fox-61's Katishia Cosley joins us live with more on how at least one convicted felon is trying to fight this. Katishia?

"Katishia Cosley (Reporter): This ban isn't only for registered sex offenders, but also for all inmates. The attorney general's office received a lawsuit from a convicted murderer who wants access to these drugs.

[Begin prerecorded segment]

"Katishia Cosley: Forty-two year old Eugene Mercer, an inmate at the Osborne Correctional Facility for the last twenty years, is suing the medical services director for denying him erectile dysfunction drugs. He claims he has AIDS, which, he says, is a disability. He argues that is why he should get the drugs. Attorney General Richard Blumenthal disagrees and says his office is moving to immediately dismiss the case.

"Richard Blumenthal: The claim here is a constitutional right to this medication. We believe there is no right for someone in prison to receive these kinds of prescription drugs.

"Katishia Cosley: Earlier this week, the centers for Medicare and Medicaid Services started notifying all fifty states that they don't have to offer Medicaid-funded Viagra or similar drugs to sex offenders.

"[Governor M.] Jodi Rell: This is like, hello, it's common sense, you know. We don't give Viagra to sex offenders, and, when the federal rules allowed that we can simply eliminate them from the Medicaid, I think it makes good sense to do so.

"Katishia Cosley: Here in Connecticut, seven different erectile dysfunction medications are covered with a doctor's prescription for clients of Connecticut's Medicaid, ConnPace and state administered general assistance programs. Governor Rell doesn't know how many inmates or sex offenders are using the impotence drugs. The state doesn't have the capability to cross-check clients with the sex offender registry, but they are working on it.

"Richard Blumenthal: We're making progress in shutting down the system so far as it's been providing these drugs or reimbursement for them to people receiving Medicare and Medicaid, and, certainly, we will stop for any inmates that may be receiving them.

[End prerecorded segment]

"Katishia Cosley: Governor Rell has already ordered the department of social services to stop giving prescriptions to inmates or registered sex offenders. Those agencies that do not comply will face penalties. I'm Katishia Cosley, Fox-61 News at 10."

The plaintiff claims that the court improperly rendered summary judgment on the ground that this report was substantially true. He argues that FOX-61's report was not substantially true because "it erroneously reported that the plaintiff is seeking erectile dysfunction drugs in his suit against the department of correction"

and that, accordingly, summary judgment on behalf of the defendants was inappropriate. We disagree.

The relevant portion of FOX-61's broadcast stated that "[f]orty-two year old Eugene Mercer, an inmate at the Osborne Correctional Facility for the last twenty years, is suing the medical services director for denying him erectile dysfunction drugs." Along with the plaintiff's opposition to FOX-61's motion for summary judgment, the plaintiff submitted an affidavit and supporting documents. One of those documents was a copy of his July 13, 2004 complaint against, inter alia, Edward A. Blanchette, whom the complaint listed as the department of correction director of clinical services. In that 2004 complaint, which the plaintiff averred was docket number CV-04-4000197-S, the plaintiff alleged, among other things, that the state had discriminated against him in denying his "request for . . . testosterone gel in January, 2004, [when] the . . . request for testosterone gel was for the treatment of HIV-hypogonadism and *erectile dysfunction* . . . ." (Emphasis added.) The 2004 complaint also alleged that the state "knew or should have reasonably known that the plaintiff's medical record reflects multiple instances over the course of several years concerning his decreased spontaneous erections, *erectile dysfunction*, decreased muscle mass and strength . . . ." (Emphasis added.)

Looking to the plain language on the face of the plaintiff's 2004 complaint, it is clear that he alleged that the department of correction's director of clinical services, as well as others, was discriminating against him by denying his request for testosterone gel for the treatment of *erectile dysfunction* and other symptoms related to HIV and AIDS. Additionally, in the complaint in the present action, the plaintiff admitted in paragraph nineteen: "The plaintiff does have a pending lawsuit in

[the] New Britain Superior Court, [Docket] No. CV-04-4000197-S against officials of the [department of correction] for discrimination based on disability . . . for their failure to diagnose and treat HIV-[h]ypogonadism and/or erectile dysfunction . . . ."

"[T]he admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader. . . . A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it. . . . *Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 866, 859 A.2d 932 (2004), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005); see also 71 C.J.S. 246, [Pleading] § 196 [2000] (admission in a plea or answer is binding on the party making it, and may be viewed as a conclusive or judicial admission). It is axiomatic that the parties are bound by their pleadings." (Internal quotation marks omitted.) *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 769, 890 A.2d 645 (2006). "The most persuasive evidence that a [purportedly libelous] statement is accurate is the existence of a public record confirming the information reported." B. Sanford, Libel and Privacy (2d Ed. Sup. 1998) § 6.4.3.1, p. 6-46. On the basis of the record before us, we conclude that not only were FOX-61's statements substantially true, they literally were true when viewed in combination with the plaintiff's pleadings, which he had put in the public domain. Truth is an absolute defense to an allegation of libel. *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 112, 448 A.2d 1317 (1982).

B

Broadcast of NBC-30

A transcript of a May 25, 2005 NBC-30 news broadcast was submitted to the trial court along with an affidavit

attesting that it was a true, accurate and complete transcript of the relevant broadcast that forms the basis of the plaintiff's claim against NBC-30. That transcript is as follows:

"Logan [Byrnes]: Governor Rell says enough is enough! She doesn't want one more sex offender getting prescription drugs like Viagra, especially when the state is footing the bill. NBC-30's Doug Greene is here with more. Doug?

"Doug [Greene]: Governor Rell yesterday ordered the department of social services to stop providing Viagra and company to sex offenders on Medicaid. . . .

"[Governor] Rell: I believe that it is off the table, and this is like, hello? It's common sense. We don't give Viagra to sex offenders. Somehow, someone in the Medicaid program back in 1998 thought these little blue pills should be just like any other medication—available without a prescription.

"Amanda Pepin: I think that's disgusting, pretty much. I don't know why the government should be giving people Viagra.

"Tim Adkins: I just thought it was absurd, I mean why would they give sexual offenders Viagra? What would be the point for them to get more . . . more . . . healthy?

"Stephen Schiopucie: I thought it was ridiculous, completely ridiculous. No medicinal value.

"Lauren Wiser: I think it's inappropriate. I don't think they should be given Viagra. Actually, there's another side. This convicted sex offender wrote this book about inner battle against sexual terrorism. But he says, once an offender has served his time . . . [quote from Jake Goldenflame:] 'I think anybody who's completed their parole or probation successfully should have the right

to the medications like anybody else upon their doctor's recommendation.' But in Connecticut from now on, the only way convicted sex offenders can get Viagra is to pay for it themselves. When the federal rules allowed that we can simply eliminate that from Medicaid, I think it makes good sense to do so. You've told [the department of social services] not to do it anymore? Not to do it anymore.

"Doug [Greene]: On another front, there is a prison inmate, Eugene Mercer, who is suing the state. He's not a sex offender. He's a convicted killer. But he wants his Viagra, and the state doesn't buy it for inmates."

The plaintiff claims that the court improperly rendered summary judgment on the ground that this report was substantially true. He argues that there existed material issues of fact in dispute and that the court improperly weighed those facts when it found that the distinction between Viagra and testosterone gel "is a distinction without substantial difference." He further argues that "Viagra versus testosterone gel presents a triable issue of fact . . . . The pleaded truth of [the] plaintiff's [complaint against the state] is that [the] plaintiff sought testosterone gel (an anabolic steroid) to treat HIV-hypogonadism, the symptoms of which include erectile dysfunction. The plaintiff did not seek Viagra or other impotence drugs as reported by the defendants."

Although "the determination of whether an allegedly libelous statement is substantially true [can be] one for the jury . . . both the common law and the First Amendment [to the United States constitution] submit the issue to 'close scrutiny' when appropriate. Summary judgment, therefore is often granted to defendants on the issue of substantial truth." B. Sanford, Libel and Privacy § 6.4.1 (2d Ed. Sup. 2007), pp. 6-26 through 6-27. "[W]here minor inaccuracies [are] immaterial to the 'sting' or harm suffered by the plaintiff . . . [or]

where the inaccuracies [are] of a technical nature that conveyed the same meaning as the true facts would have in the eyes of the average reader," summary judgment may be appropriate. Id., § 6.4.2, p. 6-39.

"In a civil action for libel, where the protected interest is personal reputation, the rule in Connecticut is that the truth of an allegedly libelous statement of fact provides an absolute defense. . . . Contrary to the common law rule that required the defendant to establish the literal truth of the precise statement made, the modern rule is that only substantial truth need be shown to constitute the justification. . . . It is not necessary for the defendant to prove the truth of every word of the libel. If he succeeds in proving that the main charge, or gist, of the libel is true, he need not justify statements or comments which do not add to the sting of the charge or introduce any matter by itself actionable. . . . The issue is whether the libel, as published, would have a different effect on the reader than the pleaded truth would have produced." (Citations omitted; internal quotation marks omitted.) *Goodrich* v. *Waterbury Republican-American, Inc.*, supra, 188 Conn. 112–13.

Clearly, the portion of the NBC-30 report that is relevant to the plaintiff's claim of libel would be the very last portion, which stated: "On another front, there is a prison inmate, Eugene Mercer, who is suing the state. He's not a sex offender. He's a convicted killer. But he wants his Viagra, and the state doesn't buy it for inmates." The plaintiff argues that he never requested Viagra and that this part of the broadcast "would have a different effect on the reader than the pleaded truth would have produced." See *Goodrich* v. *Waterbury Republican-American, Inc.*, supra, 188 Conn. 113. His argument is that he requested testosterone gel, not Viagra, and, had NBC-30 correctly reported that fact, the effect on the listener would have been different. Additionally, he argues that the court improperly rendered

summary judgment when it determined that there was no substantive difference between Viagra and testosterone gel.

Although we agree, and NBC-30 concedes, that there is no evidence that the plaintiff ever sought Viagra, we conclude that the plaintiff clearly pleaded that one of the purposes for seeking testosterone gel was for the treatment of erectile dysfunction. Accordingly, had the report said: "But he wants his testosterone gel," or, "But he wants his erectile dysfunction medication," instead of, "But he wants his Viagra," it would not have had a different effect on the reader or listener. See *Strada* v. *Connecticut Newspapers, Inc.*, 193 Conn. 313, 319–22, 477 A.2d 1005 (1984).

In conclusion, we affirm the court's rendering of summary judgment. On the basis of the record, including the plaintiff's pleadings and the documentary evidence submitted with his affidavit in opposition to the defendants' motion for summary judgment, we conclude that the statements were true, either substantially or literally. Having so concluded, we need not address whether the defendants' broadcasts were protected by the fair reporting privilege.

The judgment is affirmed.

In this opinion the other judges concurred.